OPINION
{¶ 1} Plaintiffs-appellants, Alternatives Unlimited-Special, Inc. (individually "AU-Special"), and Alternatives Unlimited, Inc. (individually "AU, Inc.") (collectively referred to as "appellants"), appeal from a judgment of the Ohio Court of Claims, in which the court granted partial summary judgment to defendant-appellee, Ohio Department of Education ("ODE").
 {¶ 2} AU, Inc. is a for-profit Maryland corporation. AU-Special is a non-profit corporation. Both AU, Inc. and AU-Special were engaged in activities relating to the *Page 2 
formation of community schools. One month before AU-Special was formally incorporated, representatives from AU-Special faxed ODE a proposal to create a community school, the Cleveland Alternative Learning Academy ("CALA"). The proposal identified various individuals as the principal developers of CALA. AU-Special and ODE eventually agreed that the state board of education, through ODE would sponsor CALA. ODE executed a five-year contract beginning September 1, 1999, and ending June 30, 2004, to operate the school for students enrolled in grades three, four, five, and six.
 {¶ 3} Parents of enrolled and prospective students expressed a desire to have younger and older students attend CALA, and CALA subsequently also enrolled children in grades two, seven, and eight for the 1999-2000 school year. On October 18, 1999, appellants sent ODE a letter requesting approval of the expanded enrollment, but CALA did not wait for approval before enrolling the students in grades two, seven, and eight for the 1999-2000 and 2000-2001 academic years. ODE refused to modify the contract and provide funds for students in the additional grades until certain actions were taken by AU-Special. The contract was never modified, and ODE provided no funding for the students enrolled in grades two, seven, and eight. Due to funding problems related to students enrolled in grades two, seven, and eight, as well as other funding issues, CALA closed during the 2001 school year.
 {¶ 4} On May 7, 2002, appellants filed suit against ODE in the Court of Claims, asserting two causes of action for breach of contract, which included claims for promissory estoppel and unjust enrichment. Appellants generally sought declaratory judgment and monetary damages for ODE's failure to pay for all of the students actually enrolled and taught at CALA, as well as the alleged invalid, unilateral rescission of the *Page 3 
contract. ODE countered that it owed no obligation to provide funding for students improperly enrolled in grades two, seven, and eight, and that certain individuals associated with appellants were entitled to rescind the contract as the governing authority. ODE also asserted that appellants lacked standing to bring suit on the contract.
 {¶ 5} The issues of liability and damages were bifurcated, and the case eventually proceeded to trial regarding liability only on July 12, 2004. On September 15, 2005, the trial court issued its judgment in favor of ODE, concluding that neither AU-Special nor AU, Inc. was a party to the contract as the governing authority for CALA, and, thus, they lacked standing to pursue their claims for breach of contract. Appellants appealed, and in Alternatives Unlimited-Special, Inc. v. OhioDept. of Edn., 168 Ohio App.3d 592, 2006-Ohio-4779 ("AlternativesI"), this court reversed the judgment of the trial court, finding ODE was estopped from denying appellants' standing based upon an unrelated case in another appellate jurisdiction, in which the state and appellants agreed that appellants were the "governing authority" for CALA, and, thus, were the proper party in the present case. This court remanded the matter to the Court of Claims.
 {¶ 6} Upon remand, prior to trial, ODE moved for partial summary judgment, arguing that the contract between the parties was never modified to include funding for grades two, seven, and eight. After an oral hearing on ODE's motion for partial summary judgment, at which appellants did not appear, the trial court granted ODE's motion. On April 23, 2008, appellants moved to amend their complaint to dismiss without prejudice all remaining claims not related to the funding for grades two, seven, and eight. On May 2, 2008, the trial court entered judgment for ODE. Appellants appeal, asserting the following assignments of error: *Page 4 
 [I.] The trial court erred by refusing a new trial as remanded expressly by the Court of Appeals.
 [II.] The trial court erred by concluding that the State may deny per-pupil public funding for students actually taught at a community school[.]
 {¶ 7} In their first assignment of error, appellants argue that the trial court erred when it refused to proceed to a new trial upon remand as this court expressly ordered in Alternatives I. Specifically, appellants argue that the trial court erred when it granted ODE partial summary judgment on its breach of contract claims because this court's decision in Alternatives I required the trial court to hold a new trial. We disagree. In Alternatives I, we found that "appellants' breach-of-contract claims have not yet been meaningfully addressed or determined." Alternatives I, at ¶ 52. We then concluded that "[h]aving determined that the state is estopped from denying appellants' standing, we reverse the decision of the trial court and remand this cause to the trial court for determination of appellants' asserted breach of contract claims." Id., at ¶ 53. We did not indicate that the trial court had to resolve the breach of contract claims pursuant to a trial. Rather, the trial court was free to address appellants' breach of contract claims upon motion for summary judgment, as it did. In Alternatives I, we required only that the trial court make a "determination" of appellants' breach-of-contract claims, and it is clear that "summary judgment is a determination as a matter of law." Yo-Can, Inc. v. The Yogurt Exchange,Inc., 149 Ohio App.3d 513, 2002-Ohio-5194, at ¶ 13.
 {¶ 8} Furthermore, it is well-established that remand does not inherently require a new hearing. Webb v. Webb (Sept. 2, 1999), Marion App. No. 9-98-66. When a judgment is reversed and remanded for further proceedings, the trial court may take up the matter *Page 5 
at the point where the first error was committed. Miller v. Miller
(1960), 114 Ohio App. 234. Where there are no specific instructions given by the appellate court for the trial court to take new evidence before rendering another judgment, no new hearing is required upon remand. See Webb, supra. Also, where the evidence taken in the original action prior to appeal is sufficient evidence upon which to make the findings required by the remand, the trial court may decide the matter based upon the prior evidence without a new hearing. See id.
 {¶ 9} In the present case, the error found on appeal regarded the standing of appellants. No error was found with regard to the funding for grades two, seven, and eight. The trial court committed the error regarding standing after holding a full liability trial. Given our remand did not direct the trial court to hold a new hearing and take new evidence, it was permitted to determine the remaining issues as of the point it committed the error, which was after all of the evidence had been submitted at the full hearing. The trial court believed the evidence taken in the original hearing was adequate to decide the funding issue after remand; therefore, it was well within its discretion to determine the matter without a new trial or taking new evidence.
 {¶ 10} In rendering partial summary judgment, the trial court specifically found that there was no new evidence to be presented, and, although appellants protest this finding, appellants fail to cite any new evidence that they desired to submit. Appellants do argue that the trial court did not consider subsequent legal precedent issued after the remand that stated "funding follows the student," citing State ex rel.Ohio Congress of Parents Teachers v. State Bd. of Edn.,111 Ohio St.3d 568, 2006-Ohio-5512. However, appellants were free to raise this case upon remand for application to the facts that were developed *Page 6 
at the prior trial. We do note that appellants did, in fact, argue that "funding follows the student" in its memorandum contra ODE's motion for summary judgment; thus, the trial court did have the opportunity to consider this contention. For all the above reasons, we find the trial court did not err when it decided the issues upon remand pursuant to summary judgment without holding a new trial. Appellants' first assignment of error is overruled.
 {¶ 11} Appellants argue in their second assignment of error that the trial court erred by concluding upon summary judgment that ODE properly denied per pupil public funding for students actually taught at CALA, and, thus, was not in breach of contract. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. Franks v. The Lima News (1996),109 Ohio App.3d 408. Civ. R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. State ex rel. Howard v. Ferreri
(1994), 70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra.
 {¶ 12} Furthermore, in an action for breach of contract, the plaintiff has the burden of proving four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. Jarupan v. Hanna,173 Ohio App.3d 284, 2007-Ohio-5081. *Page 7 
 {¶ 13} On appeal, appellants' main contention is that, based uponOhio Congress, supra, they were entitled to funding for grades two, seven, and eight, and the state was in breach of contract by failing to remit payment. Appellants cite the following from Ohio Congress in support of their argument:
 * * * If a child moves out of the district altogether, the state is permitted to reduce its funding to that child's district because state money follows the child. * * * The same thing occurs when a child opts to attend a community school. R.C. 3314.08. * * *
 * * *
 * * * When a student leaves a traditional school to attend a community school, the state funds follow the student. Accordingly, we find that R.C. Chapter 3314, as applied, is constitutional. * * *
Ohio Congress, at ¶ 36, 39. Appellants argue that, given this principle of law, the stipulated facts in the present case make the prima facie case that ODE owes funds to them. In sum, appellants maintain thatOhio Congress makes it mandatory that the "funds follow the student," and the state may not deny funding for any reason.
 {¶ 14} Appellants use a phrase out of context from Ohio Congress and apply it in a vacuum without consideration of other legal tenets. Appellants' contention that "[t]he [s]tate enjoys no discretion, nor other legal authority to approve anything as a prerequisite" to receiving funding would require the state to pay any entity or individual that claims to instruct a student, regardless of the entity's or individual's abidance to other legal requirements. Appellants neglect to acknowledge the passage from Ohio Congress that indicates: "Funding formulas for traditional and community schools are complex, although we may summarize them by saying that state money follows the student." Id., *Page 8 
at ¶ 53. Thus, the court in Ohio Congress makes clear that the rule "funding follows the student" is only a general principle, and many other factors go into determining the funding available to community schools.
 {¶ 15} More importantly, beyond general background material, OhioCongress has little relevant application to the issues in the present case. The court in Ohio Congress was asked to pass upon the constitutionality of R.C. Chapter 3314, the Community Schools Act.Ohio Congress in no way addresses whether a community school may receive funding for pupils taught in grade levels not specified in the contract between the community school and its sponsor. The phrase "funding follows the student" does not even relate to the crux of the matter in the present case. The ultimate question at bar is not whether appellants should have remitted funding to CALA for students who enrolled in classes. Rather, the fundamental question at issue is whether a community school may add grade levels to its program without the contractual approval of its sponsor. Thus, we find Ohio Congress of little value, beyond providing basic information about the community school structure, in determining the issue at hand.
 {¶ 16} The court in Ohio Congress did, however, provide one principle that is an apt starting point for addressing the relevant issue in the present case; that is, "[e]ach community school is governed by a contract between the governing authority of the school and its sponsor. R.C. 3314.03." Ohio Congress, at ¶ 9. The trial court in the present case found that, because the contract between appellants and ODE was never modified to reflect ODE's post-contractual request to teach additional grade levels two, seven, and eight, the state of Ohio was not required to provide appellants funding for the pupils taught in the grade levels not specified in the contract. *Page 9 
 {¶ 17} In Alternatives I, we detailed the structure of R.C. 3314.03, including agreements between community schools and their sponsors. A community school is funded by state revenues pursuant to a complex calculation set forth in R.C. 3314.08. Alternatives I, at ¶ 2. Once created, a community school may enter into contracts with its sponsor under R.C. Chapter 3314. Id. The chosen sponsor may enter into a preliminary agreement, pursuant to R.C. 3314.02(C)(2), indicating its intention to sponsor the community school. Id., at ¶ 3. Once a preliminary agreement is reached, the proposing individual or group may proceed to finalize plans for the school, establish a governing authority for the school, and negotiate a contract with the sponsor. Id., citing R.C. 3314.02(C)(2). If the proposing person or group of individuals abides by the preliminary agreement and all applicable statutory provisions, the sponsor must enter into good-faith negotiations and execute a contract in accordance with R.C. 3314.03. Id. Pursuant to R.C. 3314.03, each contract entered into under R.C. 3314.02
between a sponsor and the governing authority of a community school must specify certain terms and conditions, such as the educational program, academic goals, performance and administration standards, dismissal procedures, arrangements for providing health benefits to employees, and procedures for resolving disputes between the sponsor and the governing authority of the school. Id., at ¶ 5, citing R.C. 3314.03(A).
 {¶ 18} In the present case, ODE agreed to sponsor CALA, executing a five-year contract beginning September 1, 1999, and ending June 30, 2004. On October 18, 1999, one of appellants' representatives wrote a letter to ODE requesting approval of enrollment of grades two, seven, and eight. CALA did not wait for approval and educated students in grades two, seven, and eight, in addition to grades three through six, for the 1999-2000 *Page 10 
and 2000-2001 academic years. Appellants admit that ODE refused to modify the contract, and, thus, provide funds for students in the additional grades, until appellants submitted to ODE the appropriate resolution, as well as updated records and curriculum goals.Alternatives I, at ¶ 11. Thus, there is no dispute that the contract was never modified. Id.
 {¶ 19} On appeal, appellants do not specifically contest that the contract contemplated only the formation of grade levels three through six at CALA, and they assign no error in this respect. Instead, appellants rely upon arguments seeking to demonstrate why it does not matter whether the contract failed to specify the additional grade levels. Appellants first assert that R.C. 3314.06(A) requires that it is the community school that defines which grade levels it instructs, and such is not determined by the state. Appellants cite the following portion of R.C. 3314.06:
 The governing authority of each community school established under this chapter shall adopt admission procedures that specify the following:
 (A) That except as otherwise provided in this section, admission to the school shall be open to any individual age five to twenty-two entitled to attend school pursuant to section 3313.64 or 3313.65 of the Revised Code in a school district in the state.
 (B)(1) That admission to the school may be limited to students who have attained a specific grade level or are within a specific age group[.]
 {¶ 20} However, nothing in the above cited statutory language addresses the issue on appeal; that is, whether the contract between the sponsor and the governing authority must include the grade levels offered. R.C. 3314.06 indicates only that the governing authority must adopt admission procedures that specify the grade levels offered or to *Page 11 
which age groups the school is open. Whether the contract must include these specifications is not addressed. Therefore, we find R.C. 3314.06
unhelpful and appellants' reliance upon it unpersuasive.
 {¶ 21} Appellants next contend that a state agency acts only by express authority, and actions are only valid if they are consistent with statutory authority. Specifically, appellants assert that, because there was no statutory authority under which ODE could contend that grade levels must be specified in a contract between the governing authority and the sponsor, any requirement by ODE here was void ab initio. Appellants similarly maintain ODE's actions constituted an arbitrary governmental action violative of the United States Constitution. However, former R.C. 3314.03(A)(2), which was in effect at the time the parties entered into the contract and is entitled "Required terms of contracts; comprehensive plans," provides, in pertinent part:
 (A) Each contract entered into under section 3314.02 of the Revised Code between a sponsor and the governing authority of a community school shall specify the following:
 * * *
 (2) The education program of the school, including the school's mission, the characteristics of the students the school is expected to attract, the ages and grades of students, and the focus of the curriculum[.]
(Emphasis added.) Clearly, R.C. 3314.03(A)(2) requires that the contract between the sponsor and the governing authority of the community school must include the grades of the students. Therefore, contrary to appellants' assertion, there existed statutory authority to support ODE's contention that grade levels must be specified in the contract between the governing authority and the sponsor. Furthermore, Article VII of the contract at issue *Page 12 
specifies that "any changes or modifications of this agreement shall be made and agreed to in writing." It is undisputed that the parties never agreed in writing to any modifications to the grades taught at CALA, and this court already held in Alternatives I that the contract was never modified. Alternatives I, supra, at ¶ 11. Therefore, based upon the above statutory and contractual language, we find ODE's requirements were not void ab initio and did not constitute arbitrary governmental action.
 {¶ 22} Appellants also contend that, because ODE failed to pay appellants or any other school for the students taught at CALA during the years in question, ODE received a windfall and was unjustly enriched. Unjust enrichment is an equitable principle which holds that no person should retain a benefit which would result in inequity and injustice. City of Girard v. Leatherworks Partnership, Trumbull App. No. 2004-T-0010, 2005-Ohio-4779, at ¶ 41. A plaintiff must establish the following three elements to prove unjust enrichment: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183.
 {¶ 23} However, the doctrine of unjust enrichment does not apply when a contract actually exists; it is an equitable remedy applicable only when the court finds there is no contract. Hummel v. Hummel (1938), 133 Ohio St. 520, 525-528 (the equitable theory of unjust enrichment operates only where there is no express, unambiguous contract and no demonstration of fraud or bad faith). Here, there existed a binding contract in the present case between appellants and ODE that clearly did not include provisions for grades two, seven, and eight. Furthermore, unjust enrichment requires the retention of the benefit *Page 13 
under circumstances where it would be unjust to do so. In this case, we have found that ODE properly withheld funding because the contract did not specify the instruction of grades two, seven, and eight. Therefore, appellants' claim under the doctrine of unjust enrichment must be rejected.
 {¶ 24} For all the above reasons, we find the trial court did not err by concluding upon partial summary judgment that ODE properly denied per pupil public funding for students actually taught at CALA because the contract between the parties was never modified to include funding for grades two, seven, and eight. Therefore, appellants' second assignment of error is overruled.
 {¶ 25} Accordingly, appellants' two assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
 PETREE and FRENCH, JJ., concur. *Page 1