[Cite as *Dynamics Research Corp. v. Dept. of Job & Family Servs.*, 2012-Ohio-3999.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DYNAMICS RESEARCH CORPORATION

    Plaintiff/Counter Defendant

    v.

THE OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, et al.

    Defendants/Counter Plaintiffs

Case No. 2010-06231

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff/counter defendant, Dynamics Research Corporation (DRC), brought this action against defendants/counter plaintiffs, Ohio Department of Job and Family Services (ODJFS) and Ohio Department of Administrative Services (DAS) (collectively, the state).[1] Both parties allege claims for breach of contract and unjust enrichment. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.[2]

{¶ 2} DRC entered into a contract with the state to design and implement a software application (Statewide Automated Child Welfare Information System or SACWIS) to manage Ohio's child welfare system. The contract, as amended, was to expire on April 10, 2009. After DRC had implemented the application, but before all of its work was complete, the state issued a letter informing DRC that it was exercising its option to terminate the contract for convenience on February 27, 2009.

---

[1]DRC's February 10, 2012 motion for leave to file a brief in excess of the page limitation is GRANTED instanter.

[2]DRC's February 17, 2012 motion for leave to supplement the record is DENIED.

{¶ 3} The contract provides that DRC is entitled to compensation for work that was performed prior to the time of termination. The relevant portion of the request for proposals (RFP) states, in pertinent part, as follows:

{¶ 4} "If the termination is for the convenience of the State, the Contractor will be entitled to compensation for any work on the Project that the Contractor has performed before the termination. Such compensation will be the Contractor's exclusive remedy in the case of termination for convenience and will be available to the Contractor only once the Contractor has submitted a proper invoice for such, with the invoice reflecting the amount determined to be owing to the Contractor by the State. The State will make that determination based on *the lesser of the percentage of the Project completed or the hours of work performed in relation to the estimated total hours required to perform the entire applicable unit(s) of Work*." (Emphasis added.) (DRC Exhibit 1, Page 82.)

{¶ 5} Both the scope of the work that was to be performed on the project and the compensation that DRC was to receive are specified in the contract documents. The general terms and conditions of the contract documents contain a "Statement of Work" which provides as follows:

{¶ 6} "The RFP and the Contractor's Proposal (Collectively referred to as the 'RFP') are a part of this Contract and describe the work (the 'Project') the Contractor will do and any materials the Contractor will deliver (the 'Deliverables') under the Contract." (DRC Exhibit 1, Page 76.)

{¶ 7} With regard to compensation, the RFP provides that DRC was to be paid upon completion of certain "Tasks," which are defined portions of work that were to be

reviewed and approved by the state.  DRC would not be paid until "complete and satisfactory performance of the Project or in the case of milestone payments * * * all relevant parts of the Project tied to the applicable milestone.  Payment of the Fee is also contingent on the Contractor delivering a proper invoice and any other documents required by the RFP."  *Id.*  The court has previously determined that DRC submitted invoices for Tasks 1-10 and that the state subsequently approved the invoices and paid DRC for completing the associated tasks. *See* Decision June 23, 2011.

{¶ 8} At the time of termination, DRC had already exceeded the "estimated total hours required to perform."  There is no dispute that a calculation of "the percentage of the Project completed" would yield the lesser of the two measures set forth in the contract and, therefore, such calculation is required to determine the amount of additional compensation, if any, that is owed to DRC.

{¶ 9} The state argues that DRC failed to deliver a software application that complied with all mandatory federal functionality requirements.  Tresa Young stated that she was hired by the state in July 2008 as the project manager.  Young testified that the software application's financial module does not meet the federal functionality requirements.  Additionally, Young identified several "defects" regarding case tracking including failure to merge multiple referrals and data entry problems.  According to Young, the federal government determined that the system is not compliant with federal guidelines.  Young asserted that the state spent an additional $10 million to correct "defects" in the system.[3]

---

[3] DRC's July 14, 2011 motion in limine is DENIED.

{¶ 10} Task 3 of the RFP addresses the federal functionality requirements; however, as the court has previously determined, DRC submitted an invoice for Task 3 and the state subsequently approved the invoice and paid DRC for completing the task. *See* Decision June 23, 2011.

{¶ 11} The state also asserts that the software application never successfully completed the mandatory performance testing specified in Task 10. Eric Glenn, the state's contract supervisor for the RFP, testified that the state never accepted the software application. Glenn asserted that pursuant to Task 10, the software application is required to operate for 30 consecutive days without material issues during the "performance period." *See* DRC Exhibit 1, Pages 53-55. If a material issue is discovered, then the performance period would stop and the performance period would begin again from the beginning. *See* DRC Exhibit 1, Page 90. If the software application successfully completed the performance period, the state would accept the system. *Id.* Glenn testified that as of February 21, 2009, 742 defects were identified in the system. Glenn stated that the defects were categorized as either critical, high, medium, or low and that 522 of the defects were high, while 17 were considered critical.

{¶ 12} Task 10 of the RFP addresses performance testing and provides as follows: "Upon completion of the Statewide implementation, submission of the Implementation Report, and successful completion of the performance period defined in Attachment Three, Part Five: Acceptance and Maintenance, the Contractor will present Ohio SACWIS to the State for acceptance. *The system presented for acceptance must account for all required functionality, training, conversion, documentation and any other*

*requirements of this RFP.*" (Emphasis added.) (DRC Exhibit 1, Page 55.) Attachment Three, Part Five, Acceptance and Maintenance provides: "there will be a period for performance testing of the Project. During the performance period, the State, with the assistance of the Contractor, will perform acceptance testing. * * * [T]he Project must meet the standard of performance required by the RFP for 30 consecutive calendar days." (DRC Exhibit 1, Page 90.) The contract provides that the state will perform the 30-day acceptance testing during Task 10 of the project. DRC submitted an invoice for Task 10 and the state subsequently approved the invoice and paid DRC for completing the task.

{¶ 13} Although the state points to various contract provisions for the proposition that it may review work that it has previously accepted, none of the provisions cited support its assertion that tasks DRC performed which had been subsequently accepted and approved for payment by the state were subject to further review as to the value of the work. Moreover, this court has already determined that any claim for cover by the state fails as a matter of law inasmuch as DRC was not terminated for cause. In short, the state has not presented the court with any convincing evidence to support its contention that it paid for work that DRC did not perform.

{¶ 14} Regarding the percentage of the project completed, DRC asserts that it had completed 99.5 percent of the project when the state terminated the contract for convenience. At the time of termination, DRC had not received the final two payments for post implementation support and the final payment under the holdback provision.

(DRC Exhibit 2, Page 160.) The state argues that DRC's calculation fails to allocate any costs for correcting the "defects" in the system.

{¶ 15} Pursuant to Amendment 16, the total payment for post implementation support is divided into 10 payment milestones due upon completion of the work at the end of each month. (DRC Exhibit 2, Page 160.) The parties agreed to a fixed price for completing post implementation support for all ten months, including March and April 2009. *Id.* DRC received payments for each month with the exception of the final two months: March and April 2009. According to the RFP, upon termination for convenience "the Contractor will be entitled to compensation for any work on the Project that the Contractor has performed before the termination." (DRC Exhibit 1, Page 82.) Accordingly, DRC is not entitled to either of the payment milestones allocated for post implementation support work for March and April 2009.

{¶ 16} Regarding the holdback provision, Kathleen Baird, an executive for DRC, testified that such a payment is routine in the industry and ensures that the contractor will finish the job. According to Baird, no level of effort is associated with the holdback payment milestone and it represents only a percentage of the total contract price. Baird stated that the state failed to pay the final holdback payment, which is "[d]ue upon completion of month 10 [of post implementation support,]" identified in Amendment 16. (DRC Exhibit 2, Page 160.)

{¶ 17} The evidence shows that the total holdback payment was divided into four separate payments to be paid at various points during the project. *Id.* Pursuant to Amendment 16, one such payment was made upon completion of month four of post

implementation support, and the final payment was to be made upon completion of month 10 of post implementation support. *Id.* DRC received all holdback payments except for the final payment. DRC completed work for eight months of post implementation support; however, the state only remitted the payment associated with the first four months of post implementation support. Amendment 16 provides that the final holdback payment is "[d]ue upon completion of month 10 [of post implementation support]." *Id.* Accordingly, DRC worked for four of the remaining six months associated with the final holdback payment. Inasmuch as Amendment 16 divides payments by months completed rather than days of work completed, DRC completed two-thirds of the final period of post implementation support. Consequently, DRC is entitled to two-thirds of the final holdback payment.

{¶ 18} Inasmuch as DRC has proved its claim for breach of contract, its claim for unjust enrichment must fail. *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 08AP-396, 2008-Ohio-6427, ¶23.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DYNAMICS RESEARCH CORPORATION

Plaintiff/Counter Defendant

v.

THE OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, et al.

Defendants/Counter Plaintiffs

Case No. 2010-06231

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

{¶ 19} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of DRC as to both its claim and the state's counterclaim. A case management conference is set for *May 25, 2012, at 11:30 a.m.,* to discuss further proceedings. The court shall initiate the conference via telephone.

_____
JOSEPH T. CLARK
Judge

cc:

Amy S. Brown                                James J. Hughes III
Randall W. Knutti                           Francisco E. Luttecke
Assistant Attorneys General                 Maria J. Armstrong
150 East Gay Street, 18th Floor             100 South Third Street
Columbus, Ohio 43215-3130                   Columbus, Ohio 43215-4291

003
Filed May 8, 2012
To S.C. Reporter August 31, 2012