JARUPAN, Appellant,

v.

HANNA, Appellee.

[Cite as *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–1069.

Decided Sept. 27, 2007.

286

Robol Law Office, L.P.A., Richard T. Robol, and Melanie Frankel, for appellant.

Roy Hanna, pro se.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Sumonta Jarupan, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Roy Hanna. For the following reasons, we reverse in part and remand.

{¶ 2} On May 17, 2005, Jarupan filed a complaint asserting claims for breach of contract and conversion against Hanna. In the complaint, Jarupan alleged that she had hired Hanna, who does business as AAA Roofing & Home Improvement, to do repair and renovation work at her home and at a rental property that she owns. According to Jarupan, Hanna failed to perform all of the work that he agreed to do, and the work that he did complete was substandard.

{¶ 3} On July 19, 2006, Jarupan tried her case to the bench. At the close of Jarupan's case, the trial court sua sponte granted a "directed verdict" in Hanna's favor. In its written judgment, the trial court reiterated its oral ruling, stating, "Plaintiff offered no evidence of breach of contract by Defendant, Plaintiff presented no evidence of proximate cause and zero evidence was put forth regarding damages."

{¶ 4} Jarupan filed a motion for a new trial in which she argued, in part, that the trial court's judgment was contrary to law because she had adduced evidence as to each element of her claims. On September 26, 2006, the trial court issued a decision and judgment entry denying Jarupan's motion. Again, the trial court found that Jarupan had failed to carry her burden of proof because "[n]ot one word was offered to prove damages."

{¶ 5} Jarupan now appeals from that judgment and assigns the following errors:

1. The Trial Court committed reversible error in *sua sponte* directing a judgment for the Defendant–Appellee on grounds that "not a word was offered to prove damages."

2. The Trial Court committed reversible error in directing a judgment *sua sponte* for Defendant–Appellee on grounds that Plaintiff–Appellant had failed to offer any evidence of damages from Defendant–Appellee's failure to perform its contracts.

3. The Trial Court committed reversible error in directing a judgment *sua sponte* for Defendant–Appellee on grounds that Plaintiff–Appellant had failed to offer any evidence of damages from Defendant–Appellee's failure to perform its services in a workmanlike manner.

4. The Trial Court committed reversible error in directing a judgment *sua sponte* for Defendant–Appellee on grounds that Plaintiff–Appellant had failed to offer any evidence of damages from Defendant–Appellee's conversion.

5. The Trial Court committed reversible error in directing a judgment *sua sponte* for Defendant–Appellee after having reserved Plaintiff–Appellant's Right to Re–Direct Until the Completion of Defendant–Appellee's Cross Examination of All Witnesses.

{¶ 6} By her first assignment of error, Jarupan argues that because she presented evidence as to each element of her claims, the trial court erred in entering judgment in Hanna's favor. In essence, Jarupan asserts that this court must review this case under a directed-verdict standard because the trial court declined to weigh the evidence offered at trial.

{¶ 7} Civ.R. 50(A)(4), governing directed verdict, is inapplicable in nonjury trials. *Whitestone Co. v. Stittsworth*, Franklin App. No. 06AP–371, 2007-Ohio-233, 2007 WL 155299, at ¶ 11; *Daugherty v. Dune* (Dec. 30, 1999), Franklin App. No. 98AP–1580, 1999 WL 1267342. Only juries render verdicts; trial courts render judgments. *Tillman v. Watson*, Champaign App. No. 06–CA–10, 2007-Ohio-2429, 2007 WL 1454781, at ¶ 8. Consequently, in a bench trial, a defendant seeking a favorable disposition after the close of the plaintiff's case must move to dismiss pursuant to Civ.R. 41(B)(2). *Sharaf v. Youngman*, Franklin App. No. 02AP–1415, 2003-Ohio-4825, 2003 WL 22100140, at ¶ 6. The distinction between a Civ.R. 50(A)(4) directed verdict and a Civ.R. 41(B)(2) involuntary dismissal is important, as the two require trial courts and appellate courts to apply different standards of review.

{¶ 8} According to Civ.R. 50(A)(4), a trial court must grant a motion for directed verdict if, after construing the evidence most strongly in favor of the

nonmoving party, it concludes that "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to [the nonmoving] party." See *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, at ¶ 14; *Goodyear Tire & Rubber Co. v. Aetna Cas. & Surety Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 3. A motion for directed verdict tests whether the evidence is sufficient to warrant a jury's consideration, so in deciding whether to grant a directed verdict, a trial court considers neither the weight of the evidence nor the credibility of the witnesses. *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, at ¶ 31; *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252. The trial court's sole concern is whether the non-moving party adduced evidence of substantial probative value in support of each element of her claims. *Estate of Cowling* at ¶ 31; *Wagner* at 119, 671 N.E.2d 252; *Cooper v. Grace Baptist Church of Columbus, Ohio, Inc.* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357. If she has, then the trial court must deny the motion. *Estate of Cowling* at ¶ 31; *Cooper* at 734, 612 N.E.2d 357. Because a directed verdict tests only the sufficiency of the evidence, it presents a question of law that appellate courts review de novo. *Groob* at ¶ 14; *Goodyear Tire & Rubber Co.* at ¶ 4.

{¶ 9} In contrast to Civ.R. 50(A)(4), Civ.R. 41(B)(2) allows a trial court to determine the facts by weighing the evidence and resolving any conflicts therein. *Whitestone Co.*, 2007-Ohio-233, 2007 WL 155299, at ¶ 13; *Sharaf*, 2003-Ohio-4825, 2003 WL 22100140, at ¶ 8. If, after evaluating the evidence, a trial court finds that the plaintiff has failed to meet her burden of proof, then the trial court may enter judgment in the defendant's favor. *Daugherty*, Franklin App. No. 98AP–1580, 1999 WL 1267342. Therefore, even if the plaintiff has presented evidence on each element of her claims, a trial court may still order a dismissal if it finds that the plaintiff's evidence is not persuasive or credible enough to satisfy her burden of proof. *Tillman*, 2007-Ohio-2429, 2007 WL 1454781, at ¶ 11. An appellate court will not overturn a Civ.R. 40(B)(2) involuntary dismissal unless it is contrary to law or against the manifest weight of the evidence. *Whitestone Co.* at ¶ 13; *Sharaf* ¶ 8.

{¶ 10} In the case at bar, the trial court directed a verdict in Hanna's favor at the close of Jarupan's case because it found that Jarupan had failed to present any evidence of certain elements of her claims. As Jarupan tried her case to the bench, the trial court erred in applying the Civ.R. 50(A)(4) directed-verdict standard rather than the standard for involuntary dismissal under Civ.R. 41(B)(2). In most cases, appellate courts have ignored such error and reviewed the "directed verdict" as if it were a Civ.R. 41(B)(2) involuntary dismissal. *Whitestone Co.*, 2007-Ohio-233, 2007 WL 155299, at ¶ 15; *Daugherty*, Franklin App. No. 98AP–1580, 1999 WL 1267342. These courts reason that no prejudice

results from the erroneous application of the directed-verdict standard because that standard is " 'much more rigorous than the involuntary dismissal standard,' " and thus, " '[s]atisfaction of the Civ.R. 50(A) standard implies satisfaction of the Civ.R. 41(B)(2) standard.' " *Whitestone Co.* at ¶ 15, quoting *Fenley v. Athens Cty. Genealogical Chapter* (May 28, 1998), Athens App. No. 97CA36, 1998 WL 295496.

{¶ 11} Generally, such reasoning is correct. A plaintiff's failure to provide any evidence as to one or more elements of her claim would mandate the failure of the claim under either standard. In such a situation, the trial court could deem plaintiff's evidence insufficient (necessitating a directed verdict in a jury trial) or unpersuasive (necessitating an involuntary dismissal in a nonjury trial).

{¶ 12} However, application of the different standards may render different results when a plaintiff succeeds in adducing evidence as to each element of her claim. In that situation, a trial court must *deny* a directed-verdict motion because the sufficiency of the evidence would require submittal of the case to the jury. However, the trial court could *grant* a Civ.R. 41(B)(2) involuntary dismissal if it, in its role as trier of fact, finds that the plaintiff's evidence fails to satisfy the required burden of proof.

{¶ 13} Difficulty on appeal arises if, in a nonjury trial, the plaintiff presents sufficient evidence, and the trial court erroneously grants a "directed verdict" anyway. Such a "directed verdict" could mean that the trial court entered judgment on the plaintiff's claim without, as required by the Civ.R. 41(B)(2) standard, weighing the evidence of that claim. Absent a weighing of the evidence, an appellate court cannot review the "directed verdict" under the manifest-weight standard applicable to Civ.R. 41(B)(2) involuntary dismissals. Cf. *Crawford v. Northeastern Oklahoma State Univ.* (1983), 713 F.2d 586, 587–588 (refusing to apply the standard applicable to former Fed.R. 41[b] motions in an appeal of a "directed verdict" entered in a bench trial where the plaintiff had presented a prima facie case). As part of the manifest-weight standard, the appellate court must presume that the trial court's findings of fact are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273. In granting a "directed verdict," however, the trial court does not make the findings of fact—the credibility determinations and resolution of evidentiary conflicts—necessary to enter judgment against a plaintiff who presents evidence as to each element of her claims.

{¶ 14} Therefore, when a trial court grants a "directed verdict" in a bench trial, an appellate court must first determine whether evidence of substantial, probative value supports each element of the plaintiff's claims. If the plaintiff has indeed presented such evidence and the trial court nevertheless

granted a "directed verdict" without weighing the evidence and determining the credibility of the witnesses, then an appellate court cannot treat the "directed verdict" as a Civ.R. 41(B)(2) involuntary dismissal. The appellate court must instead remand the case to the trial court so that that court can fulfill its role as the trier of fact.

{¶ 15} In the case at bar, Jarupan did not present evidence as to each element of her conversion claim. Conversion "is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. This definition consists of three basic elements: (1) a defendant's exercise of dominion or control (2) over a plaintiff's property (3) in a manner inconsistent with the plaintiff's rights of ownership. *RFC Capital Corp. v. EarthLink, Inc.*, Franklin App. No. 03AP–735, 2004-Ohio-7046, 2004 WL 2980402, at ¶ 61. If a defendant comes into possession of property lawfully, a plaintiff must prove two additional elements: (1) that she demanded the return of the property after the defendant exercised dominion or control over the property and (2) that the defendant refused to deliver the property to the plaintiff. Id.

{¶ 16} Jarupan asserts that Hanna converted (1) "personalty" from the rental property and (2) the funds that she entrusted to him. Contrary to Jarupan's assertions, the record contains no evidence that Hanna wrongfully took and refused to return any item from the rental property. Further, Jarupan never "entrusted" any funds to Hanna. Rather, Jarupan made payments to Hanna pursuant to the terms of the repair contracts. Because the contracts entitled Hanna to the payments and Jarupan does not dispute the validity of the contracts, the money at issue became Hanna's upon its transfer to him. *Burns v. Daily* (1996), 114 Ohio App.3d 693, 703, 683 N.E.2d 1164 ("The rule in Ohio, and in virtually all other jurisdictions, is that title to money paid pursuant to a contract for personal services passes over to the payee upon payment"). Therefore, the payments do not constitute converted property.

{¶ 17} In sum, Jarupan presented no evidence that Hanna wrongfully withheld any of her property. Therefore, the trial court's application of the directed verdict standard did not prejudice Jarupan, because judgment in Hanna's favor on the conversion claim was appropriate under either the directed-verdict or the involuntary-dismissal standard. Accordingly, we conclude that the trial court did not err in its resolution of the conversion claim.

{¶ 18} However, we come to a different conclusion as to Jarupan's breach-of-contract claims.[1] To recover upon a breach-of-contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 10, 771 N.E.2d 874, quoting *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 483, 738 N.E.2d 1271. See, also, *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42. In order to prove a breach by the defendant, a plaintiff must show that the defendant "did not perform one or more of the terms of the contract." *Little Eagle Prop. v. Ryan,* Franklin App. No. 03AP–923, 2004-Ohio-3830, 2004 WL 1607045, at ¶ 15.

{¶ 19} Ohio common law imposes upon builders and contractors a duty to perform their services in a workmanlike manner. *Seff v. Davis,* Franklin App. No. 03AP–159, 2003-Ohio-7029, 2003 WL 22999406, at ¶ 19; *Craft Builders v. McCloud* (Jan. 14, 1997), Franklin App. No. 96APE05–716, 1997 WL 15133; *Banks v. D'Andrea* (Sept. 22, 1994), Franklin App. No. 94APG03–304, 1994 WL 521172. This implied duty "requires a construction professional to act reasonably and to exercise that degree of care which a member of the construction trade in good standing in that community would exercise under the same or similar circumstances." *Seff* at ¶ 19. When a builder or contractor breaches its implied duty to perform in a workmanlike manner, the cost of repair is the proper measure of damages. *McKinley v. Brandt Constr., Inc.,* 168 Ohio App.3d 214, 2006-Ohio-3290, 859 N.E.2d 572, at ¶ 10; *McCray v. Clinton Cty. Home Improvement* (1998), 125 Ohio App.3d 521, 523, 708 N.E.2d 1075. "[T]he repair of deficient work may involve both additional activities necessitated by the deficient work, and activities previously omitted, but necessary, to proper performance in a workmanlike manner." *Barton,* 34 Ohio App.3d at 254, 518 N.E.2d 18.

{¶ 20} In the case at bar, Jarupan testified that she contracted with Hanna twice. In the first contract, Hanna and Jarupan agreed that Hanna would perform a number of repairs to Jarupan's house in return for $10,747.08. The repairs included removing and replacing the tile floor in the sunroom, removing and replacing the parquet floor in the family room, repairing drywall in the garage, and removing and replacing the roofing. At trial, Jarupan stated that

---

1. We note that Jarupan's complaint includes a claim for breach of contract and a separate claim for "breach of warranty of workmanlike manner." When a party contracts for future construction services (such as the remodeling or repair of an existing structure), the contract includes an implied duty to perform in a workmanlike manner. *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 253, 518 N.E.2d 18. Consequently, if the builder or contractor breaches that implied duty, it is liable in contract, not tort. Id. See, also, *Kishmarton v. William Bailey Constr., Inc.* (2001), 93 Ohio St.3d 226, 754 N.E.2d 785 (recognizing that failure to perform in a workmanlike manner gives rise to a contract claim against a builder of a future residence). Because the contracts at issue here were for future services, Jarupan's two claims, although separately pleaded, are in actuality the same claim.

she had paid Hanna the agreed-upon amount, but Hanna did not perform. Jarupan testified that Hanna failed to complete installation of the tile and parquet, and she offered into evidence photographs of the unfinished work. Additionally, Jarupan testified that the newly installed roof leaked. Finally, Jarupan offered into evidence numerous receipts for the materials and additional work necessary to properly complete the repairs contemplated in the contract. She stated that she had paid $1,112.35 for materials, $2,500 for work to the sunroom, and $2,050 for repair of the garage walls and ceiling.

{¶ 21} Given the above, Jarupan produced evidence as to each element of a claim for breach of contract: (1) she entered into a contract with Hanna for the repair of certain parts of her house, (2) she performed the contract by paying Hanna $10,747.08, (3) Hanna failed to complete the repairs in a workmanlike manner, and (4) she suffered $5,662.35 in damages. Therefore, we conclude that the trial court erred in finding neither evidence that Hanna breached the first contract nor evidence that damages resulted from Hanna's breach.

{¶ 22} In the second contract, Hanna agreed to repair Jarupan's rental property in return for $26,352.50. The repairs included installing doors, windows, light fixtures, kitchen and bathroom fixtures, carpeting, and linoleum flooring; reconstructing the front porch; resurfacing and painting the walls and ceilings; fixing the plumbing; and installing a chain-link fence. Again, Jarupan asserted that she had paid Hanna, but Hanna did not perform.

{¶ 23} At trial, Jarupan presented photographs depicting defaced walls, ceilings, and floors; doors installed without doorknobs; damaged light fixtures, doors, and windows; detached and damaged bathroom and kitchen fixtures; incomplete plumbing work; and a partially installed chain-link fence. Jarupan testified that after Hanna told her that he had completed the repair work, she visited the apartments and discovered them in the state shown in the photographs. Jarupan confronted Hanna and, in response, Hanna admitted that his workers had caused the damage to the apartments. Jarupan asked another contractor to submit a bid for the repair of the rental property. The second contractor offered to finish the repairs and to correct Hanna's defective work for $22,414.75.

{¶ 24} Based upon the testimony and exhibits relative to the second contract, Jarupan offered evidence as to each element of a breach of contract: (1) she entered into a contract with Hanna for the repair of her rental property, (2) she performed the contract by paying Hanna $26,352.50, (3) Hanna failed to complete the repairs in a workmanlike manner, and (4) she suffered $22,414.75 in damages. Therefore, we conclude that the trial court erred in finding neither evidence that Hanna breached the second contract nor evidence that damages resulted from that breach.

{¶ 25} Because the record contains evidence of each element of Jarupan's breach-of-contract claims, the trial court could only grant judgment in Hanna's favor if it disbelieved Jarupan's testimony and exhibits. However, in directing a verdict, the trial court did not weigh the evidence or make any credibility determinations. Logically, the trial court could not weigh or judge the credibility of evidence that it found did not exist. Accordingly, we must sustain Jarupan's first assignment of error (but only as it relates to the breach-of-contract claims) and remand this cause to the trial court so that it may evaluate the evidence as the trier of fact.

{¶ 26} Given our ruling upon Jarupan's first assignment of error, we find that her second, third, and fourth assignments of error are moot. Therefore, we next turn to Jarupan's fifth assignment of error, by which she argues that the trial court should have reserved judgment until her attorney had completed a redirect examination of her. In support of this argument, Jarupan asserts that her attorney sought to re-examine her, but the trial court deferred that examination until she testified during Hanna's case-in-chief. Then, according to Jarupan, the trial court rendered judgment prior to Hanna's putting on any evidence.

{¶ 27} Jarupan first made this argument to the trial court in her motion for a new trial. In its judgment denying that motion, the trial court stated that it had denied—not deferred—re-direct examination of Jarupan. The trial court held that its ruling was proper because Jarupan's attorney had sought to conduct the re-examination prior to Hanna's cross-examination of Jarupan.

{¶ 28} Jarupan has not provided this court with the portion of the transcript necessary for us to resolve which version of events is accurate. Without those pages, we cannot determine whether the trial court properly exercised control over the order of evidence or erred in entering judgment too early. The appellant bears the burden of providing a transcript. App.R. 9(B) and 10(A). "When [the] portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. Given the lack of the necessary transcript excerpt, we must presume that the circumstances were as the trial court described. Accordingly, we overrule Jarupan's fifth assignment of error.

{¶ 29} As a final matter, we must address Jarupan's "motion for reversal per curiam, and alternatively for all other App.R. 18(C) relief." Pursuant to App.R. 18(C), when an appellee fails to file a brief:

[T]he appellee will not be heard at oral argument except by permission of the court upon a showing of good cause * * *; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action.

Notably, App.R. 18(C) does not entitle an appellant to a per curiam reversal.

{¶ 30} In the case at bar, Hanna failed to file a brief. Consequently, this court did not accept oral argument from him and, in our resolution of this case, we have accepted Jarupan's statement of facts and issues as correct. While we also reverse the trial court's judgment, we do so in a decision upon the merits. We explicitly reject Jarupan's contention that an appellee's mere failure to file a brief warrants reversal. Accordingly, to the extent that Jarupan seeks a per curiam reversal, her motion is denied. To the extent that Jarupan seeks other App.R. 18(C) relief, her motion is granted.

{¶ 31} For the foregoing reasons, we sustain in part Jarupan's first assignment of error; overrule as moot Jarupan's second, third, and fourth assignments of error; and overrule Jarupan's fifth assignment of error. Further, we grant in part and deny in part Jarupan's motion. Finally, we reverse in part and affirm in part the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court for further proceedings consistent with law and this opinion.

Judgment reversed in part
and affirmed in part,
and cause remanded.

BRYANT and FRENCH, JJ., concur.