[Cite as *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 2012-Ohio-6310.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ALTERNATIVES UNLIMITED-SPECIAL, INC., et al.

Plaintiffs

v.

OHIO DEPARTMENT OF EDUCATION

Defendant

Case No. 2009-03410

Judge Joseph T. Clark

DECISION

{¶ 1} On February 7, 2011, the court rendered judgment in favor of plaintiffs, Alternatives Unlimited-Special, Inc. (individually AU-Special), and Alternatives Unlimited, Inc. (individually AU, Inc.) (collectively referred to as plaintiffs), on their breach of contract claim.[1] The case proceeded to trial on the issue of damages.[2]

{¶ 2} Plaintiffs' claims arise from a contract that was executed by the parties in 1999. In this case, plaintiffs have re-filed claims that were originally filed in Case No. 2002-04682. On December 9, 2008, the Tenth District Court of Appeals issued a decision in Case No. 2002-04682 affirming the May 2, 2008 judgment of this court which granted partial summary judgment to defendant-appellee, Ohio Department of Education (ODE). In its decision, the court of appeals summarized the procedural history of the case as follows:

---

[1] Judgment was granted in favor of defendant on plaintiffs' claims for unjust enrichment and promissory estoppel.

[2] Plaintiffs' April 26, 2012 motion to file a long brief is GRANTED. Defendant's May 4, 2012 motion to strike portions of plaintiffs' post-trial brief is DENIED.

{¶ 3} "On May 7, 2002, appellants filed suit against ODE in the Court of Claims, asserting two causes of action for breach of contract, which included claims for promissory estoppel and unjust enrichment. Appellants generally sought declaratory judgment and monetary damages for ODE's failure to pay for all of the students actually enrolled and taught at [the Cleveland Alternatives Learning Academy] CALA, as well as the alleged invalid, unilateral rescission of the contract. ODE countered that it owed no obligation to provide funding for students improperly enrolled in grades two, seven, and eight, and that certain individuals associated with appellants were entitled to rescind the contract as the governing authority. ODE also asserted that appellants lacked standing to bring suit on the contract.

{¶ 4} "The issues of liability and damages were bifurcated, and the case eventually proceeded to trial regarding liability only on July 12, 2004. On September 15, 2005, the trial court issued its judgment in favor of ODE, concluding that neither AU-Special nor AU, Inc. was a party to the contract as the governing authority for CALA, and, thus, they lacked standing to pursue their claims for breach of contract. Appellants appealed, and in *Alternatives Unlimited-Special, Inc. v. Ohio Dep't of Educ.*, 168 Ohio App. 3d 592, 2006 Ohio 4779, 861 N.E.2d 163 ('Alternatives I'), this court reversed the judgment of the trial court, finding ODE was estopped from denying appellants' standing based upon an unrelated case in another appellate jurisdiction, in which the state and appellants agreed that appellants were the 'governing authority' for CALA, and, thus, were the proper party in the present case. This court remanded the matter to the Court of Claims.

{¶ 5} "Upon remand, prior to trial, ODE moved for partial summary judgment, arguing that the contract between the parties was never modified to include funding for grades two, seven, and eight. After an oral hearing on ODE's motion for partial summary judgment, at which appellants did not appear, the trial court granted ODE's motion. On April 23, 2008, appellants moved to amend their complaint to dismiss without prejudice all remaining claims not related to the funding for grades two, seven, and eight. On May 2, 2008, the trial court entered judgment for ODE." *Alternatives Unlimited-Special, Inc. v. Ohio Dep't of Educ.*, 10th Dist. No. 08AP-396, 2008-Ohio-6427 (Alternatives II), ¶ 4-6.

{¶ 6} In this case, plaintiffs are asserting the same claims regarding grades three through six that were asserted in Case No. 2002-04682, but were later dismissed with the filing of an amended complaint pursuant to Civ.R. 15(A). Counts 1 through 3 of the complaint in this case are identical to the first three counts in the complaint filed in Case No. 2002-04682.[3]

{¶ 7} The parties executed a five-year contract for the term September 1, 1999 to June 30, 2004, which authorized plaintiffs to operate the school for students in grades three through six. Pursuant to the contract, plaintiffs received funding for the 1999-2000 and 2000-2001 school years. However, on August 24, 2001, before CALA was reopened for its third year of operation, defendant sent a letter stating, "[p]lease be advised the community school known as the Cleveland Alternatives Learning Academy no longer has the authority to operate as a community school pursuant to Chapter 3314 of the Ohio Revised Code. The governing authority members of the school, Elijah Scott and David Smith, rescinded the contract with the Sponsor, State Board of Education, effective August 1, 2001."[4] (Plaintiffs' Exhibit 2.)

{¶ 8} In the liability decision, the court determined that "[d]efendant had the authority to terminate the contract with plaintiffs prior to its expiration for any of the reasons listed in R.C. 3314.07(B)(1). However, defendant was required to notify CALA of the proposed termination in writing at least 90 days prior thereto. As stated above, defendant failed to provide any written notice of termination prior to the August 24, 2001 letter which purported to rescind the contract. Thus, defendant committed a breach of the contract by failing to provide plaintiffs with either the required statutory or contractual notice of termination." (Liability decision, page 8.)

{¶ 9} "[I]n an action for breach of contract, the plaintiff has the burden of proving four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3)

---

[3]On March 5, 2010, the Tenth District Court of Appeals issued a decision finding that plaintiffs' claims regarding grades three through six were timely filed pursuant to the savings statute, R.C. 2305.19(A).

[4]Plaintiffs contended that the purported recision was invalid inasmuch as Scott and Smith were not the governing authority of CALA. The Tenth District Court of Appeals subsequently determined that defendant was collaterally estopped from denying that AU was the governing authority of CALA inasmuch as the state had previously taken that position during litigation in a court of competent jurisdiction. *Alternatives I*, at ¶ 51.

breach by the defendant; and (4) damage or loss to the plaintiff." *Alternatives II*, at ¶ 12, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081.

{¶ 10} With regard to performance, there is no dispute that plaintiffs operated CALA for the first two academic years of the five-year contract period, 1999-2000 and 2000-2001, and that plaintiffs presented evidence that CALA opened in the fall of 2001. However, the parties disagree as to what compensation is owed to plaintiffs for operating CALA during the period of time that CALA was in operation under the contract.

## CONTRACT PERIOD

{¶ 11} R.C. 3314.07 provides limitations regarding the expiration, termination, or nonrenewal of a contract establishing a community school as follows:

{¶ 12} "(A)  The expiration of the contract for a community school between a sponsor and a school shall be the date provided in the contract.  A successor contract may be entered into pursuant to division (E) of section 3314.03 of the Revised Code unless the contract is terminated or not renewed * * *.

{¶ 13} "(B)(1)  A sponsor may choose not to renew a contract at its expiration or may choose to terminate a contract prior to its expiration for any of the following reasons:

{¶ 14} "(a) Failure to meet student performance requirements stated in the contract;

{¶ 15} "(b) Failure to meet generally accepted standards of fiscal management;

{¶ 16} "(c) Violation of any provision of the contract or applicable state or federal law;

{¶ 17} "(d) Other good cause.

{¶ 18} "(2) A sponsor may choose to terminate a contract prior to its expiration if the sponsor has suspended the operation of the contract under section 3314.072 [3314.07.2] of the Revised Code.

{¶ 19} "(3) *At least ninety days prior to the termination or nonrenewal of a contract, the sponsor shall notify the school of the proposed action in writing.*  The notice shall include the reasons for the proposed action in detail, the effective date of

the termination or nonrenewal, and a statement that the school may, within fourteen days of receiving the notice, request an informal hearing before the sponsor. Such request must be in writing. The informal hearing shall be held within seventy days of the receipt of a request for the hearing. Promptly following the informal hearing, the sponsor shall issue a written decision either affirming or rescinding the decision to terminate or not renew the contract.

{¶ 20} "(4) A decision by the sponsor to terminate a contract may be appealed to the state board of education. The decision by the state board pertaining to an appeal under this division is final. If the sponsor is the state board, its decision to terminate a contract under division (B)(3) of this section shall be final.

{¶ 21} "(5) *The termination of a contract under this section shall be effective upon the occurrence of the later of the following events*:

{¶ 22} "(a) *Ninety days following the date the sponsor notifies the school of its decision to terminate the contract* as prescribed in division (B)(3) of this section;

{¶ 23} "(b) If an informal hearing is requested under division (B)(3) of this section and as a result of that hearing the sponsor affirms its decision to terminate the contract, the effective date of the termination specified in the notice issued under division (B)(3) of this section, or if that decision is appealed to the state board under division (B)(4) of this section and the state board affirms that decision, the date established in the resolution of the state board affirming the sponsor's decision." (Emphasis added.)

{¶ 24} The evidence shows that, by August 2001, defendant had obtained sufficient evidence to support its decision to terminate the contract. The most convincing evidence of CALA's operational problems was the testimony of David Varda, defendant's Associate Superintendent for Finance and Accountability, who learned that CALA's financial records were "unauditable." Varda testified that he was involved with the audits that were performed to determine FTE enrollment at CALA. Daniel Schultz, Chief Deputy Auditor for the State of Ohio, stated in his November 11, 2001 report to Varda that for "more than a year" he attempted to obtain financial records from CALA, including the use of subpoenas, but its management was uncooperative. (Defendant's Exhibit B.) According to Schultz, the records from AU-Special show that the resources of CALA and another charter school in Baltimore, Maryland "were

commingled and it is highly possible that the funds which should have been spent on [CALA] were expended on other projects outside of the State of Ohio." *Id.*

{¶ 25} As stated above, plaintiffs were notified that defendant intended to terminate the contract on August 24, 2001. (Plaintiffs' Exhibit 23.) Although defendant failed to give plaintiffs proper written notice pursuant to R.C. 3314.07, the evidence established that plaintiffs were aware of both the August 24, 2001 letter and defendant's intention to terminate the contract. Indeed Stuart Berger, a founder of both AU, Inc. and AU-Special, testified that he understood that defendant did not intend to fund CALA for the 2001-2002 academic year. Defendant's Chief Legal Counsel informed Berger that the school was not authorized to operate without a contract and that the school would not receive funding. There is no evidence to show that plaintiffs requested a hearing pursuant to R.C. 3314.07 to contest the attempted termination.

{¶ 26} Nevertheless, even if plaintiffs had requested a hearing and appealed the decision pursuant to R.C. 3314.07(B)(5)(b), the termination of the contract would have been effective upon the date on which the state board affirmed defendant's decision. Inasmuch as the decision of the state board of education is final pursuant to R.C. 3314.07(B)(5)(b), the evidence showed that the decision to terminate the contract would have been upheld had plaintiffs appealed the decision. In addition to defendant's many concerns regarding CALA's failure to document learning opportunities and FTE enrollment, there is no doubt that CALA's failure to maintain auditable financial records was a sufficient ground to terminate the contract pursuant to R.C. 3314.07(B)(1)(b); "Failure to meet generally accepted standards of fiscal management." Consequently, defendant's obligation to fund CALA ended during the fall 2001 term and plaintiffs are entitled to only those damages that were contemplated under the contract for the fall 2001 enrollment period.

{¶ 27} There is no dispute that payments to plaintiffs were based upon full-time equivalent (FTE) enrollment for students in grades three through six. Funding for community schools involves a complex formula as set forth in former R.C. 3314.08. The Tenth District Court of Appeals has noted that soon after CALA opened, the parties "were quickly at odds over funding for CALA. Initial funding for community schools is based on the school's pre-opening enrollment estimates. CALA had a predicted

enrollment of 200 students. However, the actual enrollment at CALA fell well below the estimated figure, resulting in overpayment of funds. Consequently, ODE established a repayment schedule and began to recoup those funds from the monthly allocation of payments from the state throughout the 2000-2001 school year." *Alternatives I,* at 598-599.

{¶ 28} Joni Hoffman (formerly Joni Cunningham), who in 2001 was the assistant director of defendant's Office of School Options, testified that CALA was in "repayment" status during much of 2001. According to Hoffman, in addition to "student based" payments CALA also received state and federal grant funds that were paid through defendant. Hoffman testified that CALA recevied grant funds in 2001 and that her office attempted to assist CALA when she became aware that the school was having financial difficulty. In a letter dated May 10, 2001, Hoffman explained that the combined state and federal grant funds available to community schools totaled "no more than $150,000 over three years." (Plaintiffs' Exhibit 19.) According to Hoffman, CALA received $50,000 in 2001 for the "first phase" of grant funding, which represented the total amount received from state grant funds. Hoffman stated that payment of both state and federal grant funds by defendant was discretionary and that in 2001 she became aware of problems with CALA's enrollment and financial records which she believed affected the quality of education that the school provided.

{¶ 29} Barbara Garey, who was the financial officer in defendant's department of school finance, testified that she prepared calculations for 2001, including certain calculations for grades 2, 7, and 8, which were not approved grades. Garey explained that initial payments to community schools were based upon FTE estimates and that subsequent payments were "almost always" adjusted when actual FTE enrollment records were received. Garey testified that the records obtained from CALA for approved grades, three through six, supported an FTE calculation for June 2001 and defendant subsequently issued a final check in the amount of $2,241.81, which included deductions for previous overpayments.

{¶ 30} Although Berger acknowledged that the contract provided for payments based upon FTE enrollment, he conceded on cross-examination that CALA could not produce such records. Berger stated that plaintiffs did not have any records

documenting FTE enrollment after June 2001 and that it would be "impossible" to determine FTE enrollment for fall 2001. Accordingly, plaintiffs have failed to prove that they are entitled to damages based upon FTE enrollment. Furthermore, the evidence shows that plaintiffs received the initial phase of state and federal grant funds in 2001 and plaintiffs failed to prove that they were entitled to additional grant funds for the fall 2001 enrollment period.

{¶ 31} In contrast to the evidence presented by defendant regarding payments based upon FTE enrollment, plaintiffs presented documents which purport to show lost profits based upon operating expenses and revenue estimates. "Lost profits may be recovered by the plaintiff in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty." *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St. 3d 241 (1984), at paragraph two of the syllabus.

{¶ 32} The evidence established that CALA failed to produce adequate records for either student enrollment or finances. Inasmuch as the contract provided that payments to plaintiffs were based upon FTE enrollment, the court finds that any lost profits during the fall 2001 term were the direct result of CALA's failure to maintain accurate enrollment and financial records. Even if the court determined that the loss of profits was the probable result of the breach of contract, plaintiffs were required to demonstrate both the existence and the amount of lost profits with "reasonable certainty." *AGF, Inc. v. Great Lakes Heat Treating Co.,* 51 Ohio St. 3d 177, 183 (1990). Varda's testimony that CALA's financial records were incomplete and unauditable was particularly persuasive. The court concludes that plaintiffs have failed to demonstrate either the existence or amount of lost profits with reasonable certainty.

{¶ 33} Plaintiffs also contend that defendant "improperly forced" them to reimburse the state for payments made into Ohio's State Teachers Retirement System (STRS) and the School Employees Retirement System (SERS). However, the Tenth District Court of Appeals has held that this matter has already been the subject of litigation in a court of competent jurisdiction and that there was mutuality of the parties

such that the doctrine of res judicata would apply in this case. *Alternatives I*, at 606. In that case, a settlement agreement was reached among the parties as to which employer entity was responsible for paying into STRS and SERS. *Id.*; *Birinyi v. School Employees Retirement System,* Cuyahoga C.P.C. No. 448544 (Oct. 25, 2002). Therefore, res judicata bars plaintiffs from relitigating the same issue in this case.

{¶ 34} Finally, plaintiffs maintain that pursuant to R.C. 3314.18, defendant failed to reimburse CALA for school lunches that were provided to enrolled students. Although R.C. 3314.18 pertains to participation in federal school food programs, the statute became effective June 30, 2006, almost five years after the contract period. Moreover, plaintiffs admit that the contract did not address school lunches.

{¶ 35} For the foregoing reasons, the court finds that plaintiffs have failed to prove that they are entitled to damages as a result of defendant's breach of the contract. Judgment shall be rendered in favor of plaintiffs in the amount of $25, representing plaintiffs' filing fee.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ALTERNATIVES UNLIMITED-SPECIAL, INC., et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF EDUCATION

    Defendant

Case No. 2009-03410

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

{¶ 36} This case was tried to the court on the issue of plaintiffs' damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiffs in the amount of $25 which represents the filing fee paid by plaintiffs. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

_____
JOSEPH T. CLARK
Judge

cc:

Christopher P. Conomy
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Jared S. Livingston
Michael Sanchez
1406 California Street
Houston, Texas 77006

Edward D. Hayman
28499 Orange Meadow Lane
Orange Village, Ohio 44022

004
Filed July 2, 2012
To S.C. Reporter January 16, 2013