[Cite as *Cleveland Hearing & Balance Ctr., Inc. v. N.E. Ohio Med. Univ.*, 2017-Ohio-8838.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Cleveland Hearing and Balance
Center, Inc., et al.,

        Plaintiffs-Appellants,

v.

Northeast Ohio Medical University,

        Defendant-Appellee.

:
:
:
:
:
:
:
:

No. 17AP-334
(Ct. of Cl. No. 2016-00102)

(REGULAR CALENDAR)

---

## D E C I S I O N

### Rendered on December 5, 2017

---

**On brief:** *Jonathan P. Blakely*, for appellants. **Argued:** *Jonathan P. Blakely.*

**On brief:** *Michael DeWine,* Attorney General, *Velda K. Hofacker,* and *Stacy Hannan*, for appellee. **Argued:** *Stacy Hannan.*

---

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiffs-appellants, Cleveland Hearing and Balance Center, Inc. ("CHBC") and Mohamed A. Hamid, M.D., Ph.D., appeal from a judgment entry of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, Northeast Ohio Medical University ("NEOMED"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Dr. Hamid is a now-retired physician who practiced in the area of auditory and vestibular issues. Dr. Hamid owned CHBC, a corporation that has since been dissolved. Beginning in April 2012, CHBC entered into a business relationship with the Saudi Arabian Cultural Mission ("SACM") to provide educational fellowship and clinical

training for a Saudi citizen, Fuad Alghamdi, M.D., for three years.  Under this agreement, SACM would pay CHBC a tuition fee and administrative fee of $88,000 for the first year, to be adjusted annually, up to $110,000 for the third year.  CHBC then entered into a separate subcontracting agreement with NEOMED under which it was determined that NEOMED would provide the research component of Dr. Alghamdi's training while CHBC would provide the clinical component of the training.  CHBC agreed to pay NEOMED $12,500 per year for providing the research portion of Dr. Alghamdi's training.

{¶ 3}  Dr. Alghamdi participated in the fellowship training into its second year but began experiencing "some personal issues in early 2014" and eventually stopped attending clinical training with CHBC in March 2014.  (Feb. 11, 2016 Compl. at ¶ 18.)  Ultimately, SACM and NEOMED reached an agreement that SACM would pay NEOMED directly for Dr. Alghamdi's third year of fellowship training.  However, in lieu of completing his fellowship training, Dr. Alghamdi returned to Saudi Arabia.

{¶ 4}  On February 11, 2016, CHBC and Dr. Hamid filed a complaint in the Court of Claims of Ohio against NEMOED and SACM asserting claims of breach of contractual duty and good faith, declaratory judgment, and tortious interference with business relationship.  By magistrate's order dated February 16, 2016, the Court of Claims dismissed SACM as a defendant pursuant to R.C. 2743.02(E), which provides that only state agencies and instrumentalities can be defendants in original actions in the Court of Claims.

{¶ 5}  NEOMED then filed a motion for summary judgment on January 10, 2017, asserting the undisputed facts demonstrated that NEOMED neither interfered with CHBC's contract with SACM nor breached any duty of good faith.  NEOMED supported its motion for summary judgment with Dr. Hamid's deposition, an affidavit from Jeffrey Wenstrup, Ph.D., the director of the auditory neuroscience group at NEOMED, and several authenticated documents.

{¶ 6}  On February 6, 2017, CHBC and Dr. Hamid filed a motion for extension of time to respond to NEOMED's motion for summary judgment.  CHBC and Dr. Hamid stated in the motion that Dr. Hamid had been out of the country and would not return until early March 2017.  Thus, they requested an extension of time to March 15, 2017 to obtain an affidavit from Dr. Hamid and supply it to NEOMED. NEOMED responded on

February 14, 2017 and stated it did not object to a short extension of time but that March 15, 2017 was "excessive" given the scheduled trial date of April 10, 2017. (Def.'s Response at 1.) NEOMED also noted it had already filed Dr. Hamid's deposition which covered all of the allegations in the complaint.

{¶ 7} By magistrate's order dated February 15, 2017, the Court of Claims granted CHBC and Dr. Hamid an extension until February 21, 2017 to respond to the motion for summary judgment. The Court of Claims then granted CHBC and Dr. Hamid another extension until February 23, 2017 to file their response. Thereafter, on February 24, 2017, CHBC and Dr. Hamid filed a response to NEOMED's motion for summary judgment on February 24, 2017, along with a motion for leave to deem their response timely filed.

{¶ 8} On April 5, 2017, the Court of Claims issued a decision granting NEOMED's motion for summary judgment. In determining NEOMED was entitled to summary judgment on the tortious interference claim, the Court of Claims stated that the "only reasonable conclusion" from the evidence submitted is that Dr. Alghamdi had already terminated his fellowship with CHBC before NEOMED ever made a new offer to Dr. Alghamdi and SACM. (Apr. 5, 2017 Decision at 10.) Thus, the Court of Claims concluded there remained no genuine issue of material fact that NEOMED did not intentionally interfere in the relationship between CHBC, Dr. Hamid, and SACM. Additionally, the Court of Claims concluded there was no genuine of issue of material fact as to whether NEOMED breached an implied duty of good faith in the parties' subcontracting agreement. The Court of Claims issued a judgment entry that same day rendering judgment in favor of NEOMED. CHBC and Dr. Hamid timely appeal.

## II. Assignments of Error

{¶ 9} Appellants assign the following errors for our review:

> [1.] The lower court erred in granting Appellee's motion for summary judgment and finding Appellee did not breach its implied contractual duty to act in good faith toward Appellants.
>
> [2.] The lower court's denial of Appellant's [sic] motion for additional time to oppose Appellee's motion for summary judgment until Dr. Mohamed A. Hamid ("Dr. Hamid") returned to the United States prejudiced Appellants since they could not submit an opposing affidavit.

### III. First Assignment of Error −Motion for Summary Judgment

{¶ 10} In their first assignment of error, CHBC and Dr. Hamid argue the Court of Claims erred in granting summary judgment to NEOMED. More specifically, appellants assert the Court of Claims erred in concluding there were no genuine issues of material fact as to whether NEOMED breached its implied contractual duty to act in good faith toward appellants. Appellants do not challenge the Court of Claims' decision granting summary judgment on the tortious interference claim.

{¶ 11} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 12} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 13} To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*,

10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).  The purpose of contract construction is to realize and give effect to the parties' intent.  *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus.

{¶ 14} "[U]nder Ohio law, 'there is an implied duty of good faith and fair dealing in every contract.' "  *CosmetiCredit, LLC v. World. Fin. Network Natl. Bank*, 10th Dist. No. 14AP-32, 2014-Ohio-5301, ¶ 35, quoting *Am. Contr.'s Indemn. Co. v. Nicole Gas Prod., Ltd.*, 10th Dist. No. 07AP-1039, 2008-Ohio-5056, ¶ 13.   Good faith is "a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties."  *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443-44 (1996).

{¶ 15} CHBC and Dr. Hamid assert that NEOMED engaged in bad faith by arranging for Dr. Alghamdi to finish his fellowship at NEOMED.  Section 11.0 of the subcontracting agreement between CHBC and NEOMED provides that "[a]ny disputes that arise under the terms of this Agreement should be resolved first by a discussion between the Chair of the Department of Anatomy and Neurobiology at NEOMED and the Director of CHBC or their legal representatives."  (Compl., Ex. B at 5.)  Appellants argue that, pursuant to the contract, NEOMED had a duty to attempt to resolve any conflict between Drs. Hamid and Alghamdi so that Dr. Alghamdi could complete his fellowship as the parties originally contracted.

{¶ 16} However, Dr. Hamid testified in his deposition that he received a March 24, 2014 letter from an attorney representing Dr. Alghamdi stating that Dr. Alghamdi was disappointed with the training being provided at CHBC and that Dr. Alghamdi would not authorize SACM to pay any more funds to CHBC or Dr. Hamid.  The letter further stated Dr. Alghamdi was seeking a "final certification" from CHBC and Dr. Hamid of the clinical portion of the program.  (Dr. Hamid Dep. at 77.)  NEOMED also received a copy of this letter, understanding it to be notice that Dr. Alghamdi was terminating the fellowship. NEOMED had served as Dr. Alghamdi's J-1 educational visa sponsor. Under the terms of his visa, Dr. Alghamdi could not remain in the United States if he did not continue his training.

{¶ 17} In emails dated April 28 and May 3, 2014, Dr. Hamid and CHBC informed NEOMED that they were terminating Dr. Alghamdi's fellowship training in June 2014. After receiving an email from SACM that SACM was suspending the third year of Dr. Alghamdi's fellowship, NEOMED then sent CHBC a 60-day notice of termination of the subcontractor agreement on May 7, 2014. Two days later, on May 9, 2014, NEOMED agreed to expand its role in Dr. Alghamdi's training to allow Dr. Alghamdi to stay in the United States and complete his fellowship.

{¶ 18} From these undisputed facts, we agree with the Court of Claims that it was clear by March 24, 2014 that Dr. Alghamdi did not wish to receive, nor would CHBC and Dr. Hamid provide, the third year of fellowship training as originally contracted. There is nothing in the terms of the subcontracting agreement that could be construed as giving CHBC or Dr. Hamid a justified expectation that NEOMED must attempt to negotiate an exit satisfactory to all parties once it was determined the fellowship would not proceed as originally contemplated. Once Dr. Hamid and CHBC expressly informed NEOMED they could not continue to train Dr. Alghamdi, appellants could not have a justifiable expectation that NEOMED would intervene and act as mediator on their behalf.

{¶ 19} Additionally, it was not until after CHBC and Dr. Hamid made it clear they would not provide the third year of training to Dr. Alghamdi that NEOMED, as Dr. Alghamdi's visa sponsor, made arrangements for Dr. Alghamdi to finish his training. Again, nothing in either CHCB's agreement with SACM or NEOMED's subcontracting agreement with CHBC would preclude Dr. Alghamdi from finishing his fellowship training at NEOMED once the original fellowship agreement broke down. We agree with the Court of Claims that NEOMED did not engage in bad faith when it remained faithful to the original purpose of the agreement by offering to continue to provide education and training to Dr. Alghamdi.

{¶ 20} Appellants additionally argue NEOMED engaged in bad faith by refusing to join in a critical report of Dr. Alghamdi's performance. Dr. Hamid testified in his deposition that he had expressed concerns about Dr. Alghamdi's performance to staff members at NEOMED and had wanted to change Dr. Alghamdi's progress report to SACM but the NEOMED staff members did not agree that Dr. Alghamdi's performance was unsatisfactory. After NEOMED would not agree to alter Dr. Alghamdi's progress

reports, Dr. Hamid testified he unilaterally contacted SACM with his concerns about Dr. Alghamdi's performance in an April 28, 2014 email, and he testified he did so knowing that SACM would terminate the fellowship as a result. Because NEOMED did not view a negative progress report as justified, NEOMED cannot be said to have acted in bad faith in refusing to support Dr. Hamid in that regard.

{¶ 21} Finally, to the extent appellants argue NEOMED took opportunistic advantage by having communications with Dr. Alghamdi to which appellants were not privy, there is nothing in the subcontracting agreement that could be construed as giving rise to any expectation that NEOMED would never communicate with its own student without the permission or involvement of appellants. NEOMED served as Dr. Alghamdi's educational visa sponsor and was providing a component of his training. Though appellants suggest and theorize that NEOMED and Dr. Alghamdi must have engaged in conspiratorial communications, the Civ.R. 56 evidence does not disclose that any communications between NEOMED and Dr. Alghamdi were in bad faith.

{¶ 22} After a thorough and independent review of the record, we agree with the Court of Claims that reasonable minds could only conclude that NEOMED did not breach an implied duty of good faith in the parties' subcontracting agreement. Accordingly, the Court of Claims did not err in granting NEOMED's motion for summary judgment, and we overrule appellants' first assignment of error.

## IV. Second Assignment of Error – Motion for Additional Time

{¶ 23} In their second and final assignment of error, appellants argue the Court of Claims erred when it did not grant their motion for additional time to respond to NEOMED's motion for summary judgment. An appellate court reviews a trial court's denial of a motion for extension of time under an abuse of discretion standard. *Whipple v. Warren Corr. Inst.*, 10th Dist. No. 09AP-253, 2009-Ohio-4841, ¶ 6. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 24} As outlined above, NEOMED filed its motion for summary judgment on January 10, 2017, along with the transcript of Dr. Hamid's deposition testimony. Appellants then waited until February 6, 2017 to seek an extension of time to respond, asking the Court of Claims for an extension until March 15, 2017 so that they could obtain

an affidavit from Dr. Hamid, who was out of the country. Because the trial date had been set for April 10, 2017, the Court of Claims granted appellants a shorter extension than what they sought, ultimately giving them until February 23, 2017 to file their response. The Court of Claims noted appellants failed to comply with the 14-day time frame under L.C.C.R. 4(C), and appellants did not make a showing of excusable neglect.

{¶ 25} Appellants now assert the trial court abused its discretion in granting only a partial extension of time because they were unable to obtain an affidavit from Dr. Hamid during this time. However, Dr. Hamid's deposition testimony had already been filed with the Court of Claims, and appellants do not assert what, if anything, additional or beneficial Dr. Hamid would have included in an affidavit that could have created a genuine issue of material fact on summary judgment. Appellants fail to articulate how the trial court's decision was an abuse of discretion other than their general opposition to the outcome.

{¶ 26} Upon review, we find no abuse of discretion in the Court of Claims denying appellants' motion for extension of time and instead granting appellants a shorter extension of time than requested. Accordingly, we overrule appellants' second and final assignment of error.

## V. Disposition

{¶ 27} Based on the foregoing reasons, the Court of Claims did not err in granting NEOMED's motion for summary judgment, and the Court of Claims did not abuse its discretion in denying appellants' motion for an extension of time to respond to the motion for summary judgment. Having overruled appellants' two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

———————————