[Cite as *Dolder v. Auto Boutique Collision, Ltd.*, 2018-Ohio-4508.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Nicholas Dolder,                      :

        Plaintiff-Appellant,        :           No. 18AP-132
                                           (C.P.C. No. 16CV-12264)

v.                                     :

                                            (REGULAR CALENDAR)
Auto Boutique Collision, Ltd., et al.,     :

        Defendants-Appellees.       :

D E C I S I O N

Rendered on November 6, 2018

**On brief:** *Contreras Law, LLC,* and *Peter Contreras; Coffman Legal, LLC,* and *Matthew J.P. Coffman*, for appellant. **Argued:** *Peter Contreras.*

**On brief:** *Dickie, McCamey & Chilcote, P.C., Megan H. Kleinman*, and *Jessica A. Reese*, for appellees. **Argued:** *Megan H. Kleinman.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Nicholas Dolder, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for summary judgment and granting the motion for summary judgment filed by defendants-appellees Auto Boutique Limited, Auto Boutique Collision Ltd., and Alex Levitskiy. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2} On March 16, 2015, Dolder entered an employment contract ("contract") with appellees,[1] agreeing to serve as a manager for the automobile collision repair shop located

---

[1] The stated parties to the contract were Dolder and "Auto Boutique Collision." Levitskiy signed the contract as "CEO" of "Auto Boutique Collision," even though that specific name was not registered as a business in

at 1037 East 5th Avenue, Columbus, Ohio. Dolder worked as a manager at the repair shop until his employment was terminated in May 2016. In December 2016, Dolder filed suit against appellees for breach of contract and unjust enrichment. He alleged appellees improperly failed to pay compensation to him under the "commission payments" provision of the contract. In November 2017, the parties filed cross-motions for summary judgment. In January 2018, the trial court granted appellees' motion for summary judgment and denied Dolder's motion for summary judgment.

{¶ 3} Dolder timely appeals.

## II. Assignment of Error

{¶ 4} Dolder assigns the following error for our review:

> The Trial Court erred in granting Appellees' motion for summary judgment and in denying Appellant's motion for summary judgment.

## III. Discussion

{¶ 5} In his sole assignment of error, Dolder asserts the trial court erred in granting appellees' motion for summary judgment and denying his motion for summary judgment. This assignment of error lacks merit.

{¶ 6} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12. Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made,

Ohio. Given the ambiguity as to the contracting employer, the trial court treated appellees collectively for the purpose of resolving the parties' motions for summary judgment, and ultimately determined it unnecessary, based on its disposition of those motions, to resolve which of the named defendants would be liable under the contract. Dolder does not challenge this approach, and thus we also generally refer to them collectively for the purpose of this appeal.

that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 7} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 8} At issue here is whether the trial court properly concluded that appellees are entitled to judgment in their favor as to Dolder's claim for breach of contract.[2] To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.). " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). Further, to

---

[2] Dolder does not challenge the trial court's granting of summary judgment as to his unjust enrichment claim.

be enforceable, a contract's terms "must be definite and certain." *Episcopal Retirement Homes* at 369, citing *James Ward & Co. v. Wick Bros. & Co.*, 17 Ohio St. 159, 164 (1867).

{¶ 9} The interpretation of a written contract is an issue of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). "The purpose of contract construction is to effectuate the intent of the parties," and that intent "is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987); *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus; *see Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, ¶ 35, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996) (parties are free to "contract for the terms they want, and the 'intent of the parties is presumed to reside in the language they chose to use in their agreement.' "). Common undefined words appearing in a written instrument "will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. Also, "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). Thus, courts resort to extrinsic evidence of parties' intent "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly* at 132.

{¶ 10} Dolder alleges appellees breached the contract by not fully compensating him. The contract provided that appellees would pay Dolder an annual salary of $57,000 for his work as a manager of the repair shop. Appellees paid Dolder in accordance with that obligation. Additionally, the contract states:

> **4. COMMISSION PAYMENTS**. In addition to the payments under the preceding paragraph [setting forth Dolder's annual salary], Auto Boutique Collision will make commission payments to Nicholas Dolder based on 10-25% OF SALARY of $57,000. This commission will be paid monthly on the thirtieth day of the following month.

(Emphasis sic.) (Ex. 1, attached to Dec. 30, 2016 Compl.) It is undisputed that appellees did not make any payments to Dolder under this provision of the contract.

{¶ 11} The parties disagree as to the meaning of the contract's "commission payments" provision. According to Dolder, this provision required appellees to make monthly payments to him of at least $5,700, which was 10 percent of his annual salary of $57,000, during his employment as a manager of the repair shop. Appellees argue this provision is indefinite and uncertain, thereby lacking any framework for determining when a commission is earned—making this promise to pay illusory. We agree with appellees.

{¶ 12} As pertinent here, the term "commission" is not defined in the contract, but it generally means compensation earned by an employee based on a percentage of revenue generated from the employee's services. *See Black's Law Dictionary* 327 (10th Ed.2014) (defining the term "commission" as a "fee paid to an agent or employee for a particular transaction, usually as a percentage of the money received from the transaction"); *Merriam-Webster's Collegiate Dictionary* 249 (11th Ed.2014) (defining a "commission" in part as "a percentage of the money received from a total paid to the agent responsible for the business"). Conversely, a "salary" is "fixed compensation paid regularly for services." *Merriam-Webster's* at 1097; *see Black's* at 1537 (defining "salary" as an "agreed compensation for services * * * usually paid at regular intervals on a yearly basis").

{¶ 13} In view of these definitions, a salary payment is fixed and not tied to any numerical performance variable, whereas a commission payment is based on a defined calculus relating to the employee's performance in generating revenue. Thus, the parties' use of the term commission here indicates a general intent to somehow link the payment to Dolder's revenue generating performance. The commission payment provision sets forth how a commission is calculated, at least within a certain range, and when an earned commission is paid. However, this provision does not define how a commission is earned, such as by meeting a certain revenue benchmark. Because the contract contains no language addressing how the commission is earned, the commission payments were entirely at the employer's discretion, making the provision illusory. *See Andreoli v. Brown*, 35 Ohio App.2d 53, 55 (9th Dist.1972), quoting 1 Restatement of the Law, Contracts, Section 2, Comment b (1925) (" 'An apparent promise which according to its terms makes performance optional with the promisor * * * is in fact no promise, although is often called an illusory promise.' "); *Imbrogno v. MIMRx.com, Inc.*, 10th Dist. No. 03AP-345, 2003-Ohio-6108, ¶ 8, citing *Century 21 Am. Landmark, Inc. v. McIntyre*, 68 Ohio App.2d 126

(1st Dist.1980), syllabus ("A contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory.").

{¶ 14} In sum, the contract's commission payments provision contains no indication the parties reached any agreement in defining the circumstances under which a commission would be due to Dolder. Therefore, in the absence of a meeting of the minds as to what triggers the earning of a commission, this provision is indefinite and uncertain, rendering the promise illusory. Because the commission payments provision is unenforceable, the trial court properly granted summary judgment in appellees' favor.

{¶ 15} Accordingly, we overrule Dolder's sole assignment of error.

## IV. Disposition

{¶ 16} Having overruled Dolder's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and DORRIAN, J., concur.

———————————