[Cite as *L.I. Dev.-Ohio, L.L.C. v. 6150 Som Center Rd., L.L.C.*, 2019-Ohio-3514.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

L.I. DEVELOPMENT-OHIO, L.L.C.,    :

    Plaintiff-Appellant,    :

                             No. 107865

    v.    :

6150 SOM CENTER ROAD, L.L.C.,    :
ET AL.

    Defendants-Appellees.    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 29, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-873351

---

*Appearances:*

Kasputis Law Firm, L.L.C., Edward F. Kasputis, *for appellant.*

Charles V. Longo, Co., L.P.A., Charles V. Longo, and Emily K. Anglewicz, *for appellees.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Plaintiff-appellant, L.I. Development-Ohio, L.L.C. ("L.I. Development"), appeals the trial court's decision granting summary judgment in favor of defendants-appellees, George Lonjak ("Lonjak"), Brooke DiFante

("DiFante"), and Scott Fisher ("Fisher") (collectively referred to as "individual defendants"). For the reasons set forth below, we affirm.

{¶ 2} The instant appeal arises from a breach of lease and unjust enrichment action filed by L.I. Development against 6150 SOM Center Road, L.L.C. ("Tenant") and the individual defendants. L.I. Development is the owner of commercial property located at 6150 SOM Center Road in Solon, Ohio. In December 2009, L.I. Development, as landlord, entered into a five-year commercial lease agreement with Tenant. Tenant operated a Panini's restaurant in the rental space with the basic monthly rent payment of $15,000.

{¶ 3} Tenant signed the lease through Lonjak, as its managing member, and Lonjak, DiFante, and Fisher signed in their personal capacity as guarantors for the performance of Tenant's obligations under the lease. The individual defendants were members of and owned an equity interest in Tenant. The original lease commenced on June 1, 2009, and expired on May 31, 2015. On May 1, 2014, L.I. Development and Tenant executed a five-year extension to the original lease to commence on June 1, 2015, and expire on May 31, 2020. The lease extension consisted of a letter addressed to L.I. Development stating that Tenant "gives notice to exercise its option for a period of five (5) years[.] It is further understood that the rent for the renewal term shall be determined per Section 21.02 of the Lease." Lonjak was the only individual defendant whose signature appeared on the letter. None of the individual defendants executed a separate guaranty with respect to the extension.

{¶ 4} L.I. Development alleges that on June 10, 2016, the Tenant breached the lease by vacating the premises and not paying rent and other payments due under the lease. L.I. Development alleges that it has been unable to mitigate its damages by re-renting the property.

{¶ 5} L.I. Development seeks the balance of unpaid rent, taxes, and other expenses it alleges are due through the remainder of the renewal term in the amount of $494,591.44, with interest calculated per annum at 18 percent from June 1, 2016, and $12,857.25 in attorney fees.

{¶ 6} The matter proceeded to arbitration, where it was determined that the individual defendants were not liable to L.I. Development. L.I. Development appealed the arbitration decision. The matter then returned to the trial court's docket where the individual defendants moved for summary judgment. They argued that the lease guaranty applied only to the original lease, which expired on May 31, 2015, and the lease extension does not demonstrate any intention to bind the individual defendants for rent payments beyond the original lease term. L.I. Development opposed and filed its own motion for summary judgment, which the trial court struck as untimely.[1]

{¶ 7} The trial court granted summary judgment in favor of the individual defendants. In its thorough opinion, the court stated:

> The Court finds, construing the Lease, Lease Guaranty, and Lease Renewal, that the agreements are ambiguous as to whether the

---

[1] L.I. Development voluntarily dismissed its claims against Tenant.

Individual Defendants guaranteed Tenant's obligations beyond the original Lease term.

Section 21.02 of the Lease, which incorporates the Lease Guaranty into the Lease, limits the Guaranty to "[t]his Lease" and omits any reference to renewal. Section 21.02 is ambiguous and could reasonably be construed to limit the Guaranty to the original Lease term. Similarly, the Lease Guaranty does not state it includes any renewal term and limits [L.I. Development's] recourse against the Individual Defendants for non-payment to "this Guaranty." Sections 1(e) and 2 of the Guaranty, which state the Individual Defendants waive "notice of any extensions granted," are also ambiguous as to whether the Individual Defendants waive their consent in the future where Tenant requests an extension or otherwise exercises an option to renew the Lease. Further, the Lease Renewal itself is ambiguous as it purports to exercise Tenant's option to renew, but fails to include any personal guaranty requirement or otherwise reference the Guaranty, and fails to include the Individual Defendants as signatories. In accordance with the law, the Court construes ambiguities in the agreements as limiting the Lease Guaranty to the original term of the Lease.

Therefore, The Court finds reasonable minds could not conclude there existed meeting of the minds between [L.I. Development] and the Individual Defendants sufficient to establish guaranty contract for the Renewal term. The Court further finds the Lease Renewal is inapplicable as to the Individual Defendants, and that their obligations to [L.I. Development] ended upon expiration of the original Lease, May 31, 2015. To give effect otherwise would permit construction of the Lease and Lease Guaranty where Tenant could unilaterally bind the Individual Defendants to extensions without their consent. The Lease, Lease Guaranty, and Lease Renewal failed to put the Individual Defendants on notice that the agreements could be construed in such manner, nor does the record demonstrate they intended such result.

{¶ 8} It is from this order that L.I. Development appeals, raising the following single assignment of error for review:

ASSIGNMENT OF ERROR

The trial court erred by granting [the individual defendants'] motion for summary judgment by construing the lease, lease guaranty, and lease renewal as ambiguous as to whether [the individual defendants]

guaranteed the commercial rental obligations of [the Tenant LLC] beyond the original lease term.

{¶ 9} L.I. Development argues the trial court erred when it granted summary judgment in favor the individual defendants because the lease guaranty unambiguously binds the individual defendants to any renewal terms of the Tenant L.L.C.'s lease.

{¶ 10} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1997). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶ 11} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be

resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

{¶ 12} To prevail on a breach of contract claims, "the plaintiff has the burden of proving four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *DPLJR, Ltd. v. Hanna*, 8th Dist. Cuyahoga No. 90883, 2008-Ohio-5872, ¶ 16, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66 (10th Dist.). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). "If the minds of the parties have not met, no contract is formed. *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt.*, 87 Ohio App.3d 613, 620, 622 N.E.2d 1093 (8th Dist.1993), citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982).

{¶ 13} In granting the individual defendants' motion for summary judgment, the trial court relied on *Fairview Realty Investors v. Seaair, Inc.*, 8th Dist. Cuyahoga No. 81296, 2002-Ohio-6819. We find this case instructive.

{¶ 14} In *Fairview Realty*, two corporate officers signed an agreement, on behalf of the corporation and as individual guarantors, to lease a commercial space from Fairview Realty Investors. The lease contained an option for an additional five-year term, and the officers signed an addendum to the lease that incorporated all

terms and conditions of the original lease, but required only that the officers endorse it in their corporate capacity. Ten months later, the corporate lessee moved its business to another location, notified the lessor that it was insolvent, and did not make any further payments under the lease.

{¶ 15} The trial court held that the corporate officers were not liable under the addendum to the lease and granted their motion to dismiss Fairview Realty's complaint against them. On appeal, this court found it was apparent from the face of the original lease that there was no requirement that the officers sign the lease in their personal capacity, the fact that they did so could not serve to imply that the lessor would not have executed the lease without their personal guaranties, and the officers' personal guaranties on the original lease were enforceable as to that lease only, and not as to the extension. *Id.* at ¶ 12. This court reasoned,

> Courts construe guaranty agreements in the same manner as they interpret contracts. One need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous. A guarantor is bound only by the precise words of his contract. The guarantee must clearly manifest an intent to bind the defendant. The clear and unambiguous terms of an instrument of guaranty will not be extended by construction or implication to cover a period of time not embraced within those terms. Indeed, if a contract is ambiguous so that it may either extend or limit a guarantor's obligation, such contract should be construed to limit the obligation. As this court has specifically stated in *Singer v. Bergsman*, [8th Dist. Cuyahoga No. 59682, 1992 Ohio App. LEXIS 202 (Jan. 23, 1992)],

> "Where a lease agreement does not clearly and unambiguously express the intention of the parties that the guarantor of rent payments is liable for such payments beyond the original term of the lease, the guarantor's liability terminates at the expiration of the original lease. * * *

> Moreover, a guaranty described as unconditional and/or absolute cannot, without more, be construed to be continuing."

(Citations omitted.) *Id.* at ¶ 10-11.

{¶ 16} Similarly, in the instant case, Sections 2.01, 3.01, 3.02, 5.01, 22.01, and 23.12 of the lease place the obligations for rent payments, operating expenses, taxes, utilities, maintenance, security deposit, and interest on Tenant only. Sections 11.01 and 11.02 define default and remedies under the lease and place the obligation to pay any unpaid balance of the lease term on Tenant only. With regard to extensions, Section 21.01 of the lease provides Tenant with the first option to renew and states, "Tenant shall have the right, subject to the provisions hereinafter provided, to renew the Term for one (1) period of five (5) years[.]" Section 21.02 states that if "Tenant properly exercises its first option to renew pursuant to Section 21.01 hereof, Tenant shall occupy the Premises during the First Renewal Term subject to the same terms, covenants and conditions as provided in this Lease[.]" Section 21.02 increases Tenant's rent for the extended term.

{¶ 17} Based on the above language in the lease, the individual defendants do not have any monetary performance obligations other than the operation of the lease guaranty. Section 23.19 of the lease states that "[t]his lease shall be guaranteed by George Lonjak, Brooke DiFante, and Scott Fisher pursuant to Lease Guaranty included as Exhibit C and executed concurrently with the Lease, attached hereto." The lease guaranty states in the pertinent part:

> [The individual defendants] jointly and severally, guarantee[ ] to Landlord * * * the full and prompt payment of Rent, and any and all

other sums and charges payable under the Lease by the Tenant * * * and hereby further guarantee[ ] the full and timely performance and observance of all of the covenants, terms, conditions and agreements under the Lease provided to be performed and observed by the Tenant * * * as well as all damages which Landlord may suffer in consequence of any default or breach under the Lease or this Guaranty.

{¶ 18} Section 1(e) of the guaranty further states that L.I. Development may consent to an extension or extensions of the lease term. Section 2 provides that "[t]he Guarantor waives * * * notice of any extensions granted * * * in connection with this Guaranty of any Guaranteed Payment or Guaranteed Obligation." The guaranty is otherwise silent as to renewing or extending the Lease or Lease term. The lease renewal states, "Tenant by way of this letter gives notice to exercise its option for period of five (5) years, commencing on June 1, 2015 and expiring May 31, 2020." The renewal does not reference the lease guaranty.

{¶ 19} When construing this evidence in favor of L.I. Development, reasonable minds can come to but one conclusion — there are no genuine issues of material fact and the individual defendants are entitled to judgment as matter of law. The lease, lease guaranty, and lease renewal agreements are ambiguous as to whether the individual defendants guaranteed Tenant's obligations beyond the original Lease term.

{¶ 20} Section 23.19 of the lease, which incorporates the lease guaranty into the lease, limits the guaranty to "[t]his Lease" and omits any reference to renewal. This section is ambiguous and could be construed to limit the guaranty to the original lease term. There is no provision in the lease providing that the initial lease

guaranty applies to subsequent lease renewals. Additionally, the lease guaranty limits L.I. Development's recourse against the individual defendants for non-payment to this guaranty. Sections 1(e) and 2 of the guaranty are also ambiguous as to whether the individual defendants waive their consent in the future when Tenant requests an extension or otherwise exercises an option to renew the lease. Moreover, the lease renewal is ambiguous because it exercises Tenant's option to renew, but does not include any personal guaranty requirement or otherwise reference the guaranty and does not include the individual defendants as signatories. These ambiguities limit the individual defendants' obligations under the lease guaranty to the original term of the lease. *Fairview Realty,* 8th Dist. Cuyahoga No. 81296, 2002-Ohio-6819 at ¶ 10-11; *Singer*, 8th Dist. Cuyahoga No. 59682, 1992 Ohio App. LEXIS 202. Thus, there was no meeting of the minds between L.I. Development and the individual defendants sufficient to establish a guaranty contract for the renewal term and their obligations ended upon expiration of the original lease on May 31, 2015.

{¶ 21} Accordingly, the sole assignment of error is overruled.

{¶ 22} Judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule

27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., CONCURS;
RAYMOND C. HEADEN, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

RAYMOND C. HEADEN, J., DISSENTING:

{¶ 23} I respectfully dissent from the majority opinion. For the reasons set forth below, I find there are genuine issues of material fact, and therefore, the lower court erred when it granted the individual defendants' motion for summary judgment.

{¶ 24} The terms of the documents — the lease, the lease guaranty, and the lease renewal — demonstrate there was a meeting of the minds between L.I. Development and the individual defendants to have the lease guaranty apply to lease renewals. Per section 21.02 of the lease agreement, any extension of the lease will be "subject to the same terms, covenants and conditions as provided in [the] [l]ease." The lease states, in section 23.19, that the document is guaranteed by the individual defendants.

{¶ 25} The lease guaranty specifies that the individual defendants will satisfy all sums and charges payable under the lease, including rent, during the initial term and any lease extensions. The pertinent provisions of the lease guaranty are as follows:

**1.) The landlord may at any time and from time to time take any or all of the following actions without affecting or impairing the liability and obligations of the Guarantor under this Guaranty:**

**\* \* \***

**(e) consent to an extension or extensions of the term of the Lease.**

The only reasonable interpretation of the above language is that should L.I. Development consent to a lease extension, the obligations under the lease guaranty will apply to the extension. Notice of lease extensions are not required to the guarantors, or individual defendants, yet the parties agreed the guaranty will be "continuing, absolute, and unconditional and remain in full force and effect until all [g]uaranteed [p]ayments are made, all [g]uaranteed [o]bligations are performed, and all obligations of the [g]uarantor under this [g]uaranty are fulfilled." While the lease extension does not specifically reference the guaranty, it states "[a]ll other terms and conditions shall remain per the Lease." Those terms and conditions include sections 21.02 and 23.19 of the lease, and therefore, any extension is subject to the lease guaranty.

{¶ 26} The terms of the documents identify the contracting parties' intention — to have the guaranty apply to lease extensions. Accordingly, I would find no ambiguity exists in the application of the lease guaranty to the lease and lease renewal.

{¶ 27} However, genuine issues of material fact still remain, such as L.I. Development's performance under the agreements; the individual defendants' alleged breach of the agreements; whether the individual defendants were

sophisticated parties who had previously negotiated commercial lease agreements; and any damages or loss experienced by L.I. Development.  Based upon these issues of material fact and possibly others, the trial court erred in granting the individual defendants' motion for summary judgment.